UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| BRIGHAM & WOMEN'S HOSPITAL<br>75 Francis Street,<br>Boston, MA 02115<br><br>and<br><br>THE GENERAL HOSPITAL CORPORATION<br>d/b/a MASSACHUSETTS GENERAL HOSPITAL<br>55 Fruit Street<br>Boston, MA 02114<br><br>and<br><br>MCLEAN HOSPITAL<br>115 Mill Street<br>Belmont, MA 02476<br><br>and<br><br>SPAULDING REHABILITATION HOSPITAL<br>125 Nashua Street<br>Boston, MA 02114<br><br>and<br><br>REHABILITATION HOSPITAL OF THE CAPE & ISLANDS<br>311 Service Road<br>East Sandwich, MA 02537<br><br>     Plaintiffs,<br><br>     v.<br><br>MICHAEL O. LEAVITT, Secretary<br>United States Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case Number:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND SUMS DUE UNDER THE MEDICARE ACT

Plaintiffs, Brigham & Women's Hospital, The General Hospital Corporation d/b/a

Massachusetts General Hospital, McLean Hospital, Spaulding Rehabilitation Hospital and

Rehabilitation Hospital of the Cape & Islands bring this action against defendant Michael O. Leavitt, Secretary of the United States Department of Health and Human Services, and state as follows:

## I.    Cause of Action

1.      Plaintiffs (hereinafter the "Hospitals" collectively or a "Hospital" individually) are not-for-profit hospitals that participate in the Medicare program.  The Hospitals challenge the Secretary of Health and Human Services (the "Secretary") for acting in violation of Sections 1833(n) and 1833(t) of the Social Security Act (the "Act") (42 U.S.C. §1395l(n) and §1395l(t)).  Specifically, the Secretary incorrectly applied a blended rate methodology for certain outpatient surgical and diagnostic and therapeutic radiology services set forth in Sections 1833(a)(2)(E), (i)(3) and (n) of the Act (42 U.S.C. §1395l(a)(2)(E), §1395l(i)(3) and §1395l(n)) beyond the explicit December 31, 1998 expiration date for such blending methodology (as mandated by Sections 1833(n) and 1833(t) of the Act).

2.      The Hospitals seek an order: (i) declaring that the Secretary's application of the blended payment rate limits to services furnished after December 31, 1998 is invalid; (ii) compelling the Secretary to reimburse the Hospitals for the reasonable costs of outpatient hospital services which they provided to Medicare beneficiaries during the nineteen-month period from January 1, 1999 through July 31, 2000; and, (iii) awarding interest on that amount in accordance with 42 U.S.C. §1395oo(f).

## II.    Jurisdiction and Venue

3.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.* (the "Medicare statute") and the regulations thereunder, as well as the Administrative Procedure Act ("APA"), 5 U.S.C. §§500 *et seq.*

4.      This Court has jurisdiction under 42 U.S.C. §1395oo(f) and 5 U.S.C. §§702, 704.

5.      Venue lies with this Court pursuant to 42 U.S.C. §1395oo(f)(1) and 28 U.S.C. §1391(e).

III.    **Parties**

6.      Brigham & Women's Hospital (the "Brigham") is a 663-bed, not-for-profit, acute care hospital located in Boston, Massachusetts.  It furnishes inpatient hospital services to patients, including those entitled to benefits under the Medicare Program.  Its Medicare provider number is 22-0110.

7.      The General Hospital Corporation d/b/a Massachusetts General Hospital ("MGH") is a 792-bed, not-for-profit, acute care hospital located in Boston, Massachusetts.  It furnishes inpatient hospital services to patients, including those entitled to benefits under the Medicare Program.  Its Medicare provider number is 22-0071.

8.      McLean Hospital ("McLean") is a 309-bed, not-for-profit, psychiatric hospital located in Belmont, Massachusetts.  It furnishes inpatient hospital services to patients, including those entitled to benefits under the Medicare Program.  Its Medicare provider number is 22-4007.

9.      Spaulding Rehabilitation Hospital ("Spaulding") is a 296-bed, not-for-profit hospital located in Boston, Massachusetts.  It furnishes inpatient hospital services to patients, including those entitled to benefits under the Medicare Program.  Its Medicare provider number is 22-2035.

10.     Rehabilitation Hospital of the Cape & Islands ("RHCI") is a 60-bed, not-for-profit, rehabilitation hospital located in East Sandwich, Massachusetts.  It furnishes inpatient hospital services to patients, including those entitled to benefits under the Medicare Program.  Its Medicare provider number is 22-2031.

11.     The Brigham, MGH and McLean participated in a fiscal year 1999 group appeal to the Provider Reimbursement Review Board (the "PRRB" or the "Board").  The Brigham, MGH, Spaulding and RHCI participated in a fiscal year 2000 group appeal to the Board.  Both appeals challenged the application of the blended payment adjustment to services furnished to Medicare outpatients on or after January 1, 1999.  The PRRB granted the Hospitals' petition for expedited judicial review of this issue, for both fiscal years, pursuant to 42 U.S.C. §1395oo(f)(1) and 42 C.F.R.

3

§405.1842.  Pursuant to the PRRB decision, the Hospitals bring this action for judicial review of the blended payment rate limits to services furnished during the nineteen-month period from January 1, 1999 through July 31, 2000.

12.    Defendant Michael O. Leavitt is the Secretary of the Department of Health and Human Services ("HHS" or the "Department"), the federal department which includes the Centers for Medicare and Medicaid Services ("CMS"), the agency which is responsible for the administration of the Medicare program.  References herein to the Secretary refer to him, his subordinate agencies and officials and to his official predecessors or successors, as the context requires.

IV.    **Statutory and Regulatory Background**

A.    **Medicare Cost Report and Appeals Process**

13.    The Secretary delegates many of the administrative responsibilities for the Medicare Program to CMS.  The Secretary, through CMS, contracts out many of the Department's audit and payment functions under Medicare to fiscal intermediaries (generally, insurance companies).  42 U.S.C. §1395h.  Therefore, fiscal intermediaries make payments to providers for covered services furnished to Medicare beneficiaries (42 U.S.C. §§1395h and 1395kk-l), subject to subsequent adjustments for over- or underpayments.

14.    At the close of its fiscal year, a hospital provider must submit a "cost report" to its intermediary, showing the costs incurred by it during the fiscal year, as well as the appropriate portion of those costs to be apportioned to Medicare.  The intermediary is required to analyze and audit the cost report, then issue a Notice of Program Reimbursement ("NPR").  The NPR informs the provider of a determination of the amount of its Medicare reimbursement for the cost reporting period.  42 C.F.R. §405.1803.

15.    A provider which is dissatisfied with its intermediary's final determination has a right to obtain a hearing before the PRRB by filing an appeal with the PRRB within 180 days of receiving its NPR.  42 U.S.C. §1395oo(a).  A provider may obtain expedited judicial review of "any action of the

fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines … that it is without authority to decide the question….” 42 U.S.C. §1395oo(f)(1); 42 C.F.R. §405.1877.

16.    Judicial review shall be “pursuant to the applicable provisions under [the APA]….” 42 U.S.C. §1395oo(f)(1).  The applicable provisions under the APA provide that the reviewing court may set aside agency action which exceeds an agency’s statutory authority, is contrary to law, arbitrary, capricious, unsupported by substantial evidence or otherwise not in accordance with law.  5 U.S.C. §706.

**B.    Overview of the Medicare Program and Outpatient (Medicare Part B) Services**

17.    Congress enacted the Medicare program (Title XVIII of the Social Security Act) in 1965.  At that time, Medicare was a health insurance program which furnished health benefits to participating individuals who had attained the age of 65.  Since 1965, Congress has expanded the statute to provide benefits to qualifying disabled persons and to individuals suffering from end-stage renal disease.

18.    The Medicare program includes two separate insurance programs.  Part A of Title XVIII of the Act (42 U.S.C. §§1395c – 1395i-5) covers hospital inpatient services.  Part B of Title XVIII of the Act (42 U.S.C. §§1395j – 1395w-4) covers hospital outpatient services.  Medicare beneficiaries are entitled to have payment made on their behalf for hospital inpatient and outpatient services provided to them by hospitals which are providers under the Medicare program (42 U.S.C. §1395d(a)(1)).

19.    Section 1832 of the Act (42 U.S.C. §1395k) specifies the items and services which Medicare Part B covers.  Section 1833 of the Act (42 U.S.C. §1395l) specifies the amount of Medicare payment for items and services which are covered by Medicare Part B.  At issue in this case are payments owed to the Hospitals for outpatient hospital services covered under Part B.

C.      **Medicare Reasonable Cost Reimbursement**

20.     The Medicare program reimbursed hospital inpatient and outpatient services on a "reasonable cost" basis from its inception through cost reporting years beginning prior to October 1, 1983. *See* Section 1814(b) and Section 1833(b)(2)(A) of the Act (42 U.S.C. §1395f(b) and §1395l(b)(2)(A)).

21.     Reimbursement based on reasonable cost (as defined in Section 1861(v) of the Act [42 U.S.C. §1395x(v)]) governs Medicare payment for hospital services, except where Congress expressly has authorized payment on some other basis. *See* 42 C.F.R. §413.1(b), which states:

> Medicare is generally required, under section 1814(b) of the Act (for services covered under Part A) and under section 1833(a)(2) of the Act (for services covered under Part B) to pay for services furnished by providers on the basis of reasonable costs as defined in section 1861(v) of the Act, or the provider's customary charges for those services, if lower. Regulations implementing section 1861(v) are found generally in this part beginning at §413.5.

22.     The statutory intent of the reasonable cost payment provision is to meet the actual cost incurred in the efficient delivery of necessary health services. 42 U.S.C. §1395x(v)(1)(A). *See, also*, 42 C.F.R.§§413.5(a) and 413.53(a). As a result, the definition of "reasonable cost" includes a number of limitations on the amounts considered to be reasonable. For example, during the years at issue in this case, the definition included a 10% cost reduction factor for capital-related costs, and a 5.8% reduction for operating costs, of hospital outpatient services. 42 U.S.C. §1395x(v)(1)(S)(ii).[1]

23.     The reasonable cost payment provision prohibits cross-subsidization (*i.e.*, the costs of services furnished to Medicare beneficiaries should not be shifted to non-Medicare patients, and *vice-versa*). *See* 42 U.S.C. §1395x(v)(1)(A) and 42 C.F.R. §413.9(b)(1).

24.     Without an express statutory provision for the payment of an amount less than reasonable cost, courts consistently have enforced the prohibition on cross-subsidization by

---

[1] In both 1997 and 1999, Congress extended these cost reduction factors, so they would remain in effect throughout calendar year 1999 and up until the implementation of the Outpatient Prospective Payment System in 2000. Balanced Budget Act of 1997, Pub. L. No. 105-33 ("BBA"), §4522 and Balanced Budget Refinement Act of 1999, Pub. L. No. 106-113 ("BBRA"), §201(k) (amending 42 U.S.C. §1395x(v)(1)(S)(ii)(I)-(II)).

overturning Medicare payment policies which deny payment to providers for the reasonable costs of services furnished to Medicare beneficiaries. *See, e.g., St. Mary of Nazareth Hospital Center v. Heckler*, 760 F.2d 1311, 1315 (D.C. Cir. 1985).

**D.     Medicare's Outpatient Blend Methodology**

25.     Since the Medicare program began in 1965, Congress has amended the Part B payment provision (Section 1833 of the Act [42 U.S.C. §1395l]) several times, authorizing payment of less than the reasonable cost for certain hospital outpatient services.

26.     Until 1987, hospitals which provided services to Medicare patients in an outpatient department were reimbursed for those services on the basis of the lower of their reasonable cost of such services or their customary charges with respect to such services. *See* Section 1814(b) of the Act (42 U.S.C. §1395f(b)).

27.     In 1986, Congress replaced the cost-based reimbursement system with a blended payment system for any outpatient surgical procedures that also were covered procedures in ambulatory surgical centers ("ASCs"). *See* Section 1833(i)(3) of the Act (42 U.S.C. §1395l(i)(3)) and Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509 ("OBRA '86"), §9343(a). The payment blend was phased-in over the course of a number of years. Beginning with hospital cost reporting periods that started on or after October 1, 1987, payment was the lesser of reasonable costs or a formulaic blended amount of actual hospital costs and freestanding ASC rates. For cost reporting periods beginning on or after October 1, 1987 but before October 1, 1988, the blend was based 75% on costs and 25% on the ASC portion. For the period of time beginning with the first day of a hospital's cost reporting period that began on or after October 1, 1988 and ended on December 31, 1990, the blend was based 50% on costs and 50% on the ASC portion. For portions of cost reporting periods beginning on or after January 1, 1991, such as the cost reporting period at issue in this case, the blend was composed of 42% hospital costs and 58% ASC rates. *See* Section 1833(i)(3) of the Social Security Act (the "Act") (42 U.S.C.§1395l(i)(3)) and 42 C.F.R. §413.118(d).

28.     In the Omnibus Budget Reconciliation Act of 1987, Publ. L. 100-203 ("OBRA '87"),

§4066, Congress extended the blended payment methodology to hospital outpatient radiology services

and certain other diagnostic procedures.  *See* Section 1833(n) of the Act (42 U.S.C. §1395l(n)).

Radiology services subject to the new payment formula include: diagnostic and therapeutic radiology,

nuclear medicine and CT scan procedures, magnetic resonance imaging and ultrasound and other

imaging services, excluding screening mammography.  *See* Section 1833(a)(2)(E) of the Act (42 U.S.C.

§1395l(a)(2)(E)).  As a result, payment for outpatient department radiology services performed on or

after October 1, 1988 and before January 1, 1999 is the lesser of reasonable costs or a blended amount

consisting of a cost portion (based on the hospital's actual costs) and a charge portion (based on a

standard fee schedule amount).[2]  "For hospital outpatient radiology services furnished on or after

January 1, 1991, the blended payment amount is equal to the sum of 42% of the hospital-specific

amount and 58% of the fee schedule amount."  42 C.F.R. §413.122(b)(4).

29.     The blended payment methodology was further extended to other diagnostic

procedures, effective October 1, 1989.  *See* Sections 1833(a)(2)(E)(ii) and 1833(n) of the Act (42 U.S.C.

§1395l(a)(2)(E)(ii)) and §1395l(n).  *See also*, Section 1861(s)(3) of the Act (42 U.S.C. §1395x(s)(3)).

**E.     The Outpatient Prospective Payment System and Congress's Termination of Medicare's Outpatient Blend Methodology**

30.     Section 4523 of the Balanced Budget Act of 1997, Publ. L. 105-33 ("BBA '97"),

amended Section 1833 of the Social Security Act (42 U.S.C. §1395l) by adding subsection (t), which

provided for the implementation of a prospective payment system ("PPS"), for most hospitals, for

outpatient services furnished to Medicare beneficiaries on or after January 1, 1999.  The legislative

summary which accompanied BBA '97 stated that, regarding Section 4523, "[a] prospective payment

system (PPS) for hospital outpatient department (OPD) services will be implemented on January 1,

1999."  Therefore, Congress intended and directed that outpatient services performed on or after

---

[2] On or after October 1, 1988 and before April 1, 1989, the charge portion was based on physicians' prevailing charges. On or after April 1, 1989 and before January 1, 1992, it was based on the radiology fee schedule.  On or after January 1, 1992, it is based on the resource-based relative value scale.

January 1, 1999 be paid according to a prospective payment system for hospital outpatient department services ("OPPS"). Section 4523(d) of BBA '97 made additional, conforming amendments to Section 1833 of the Act, terminating all other payment limits for hospital outpatient services, including the blended payment methodology, effective January 1, 1999. Accordingly, Section 1883(n) of the Act (42 U.S.C. §1395l(n)) explicitly sets December 31, 1998 as the expiration date for the blending methodology -- it applies to services furnished "on or after October 1, 1988 and before January 1, 1999."[3]

31.    Despite the clear Congressional mandate that OPPS begin on January 1, 1999, and that use of the blend terminate for payment of outpatient services that were rendered after December 31, 1998, CMS continued using the blending methodology until August 1, 2000. Thus, for a period of nineteen months (*i.e.*, January 1, 1999 through July 31, 2000), CMS reimbursed them for the designated services under a methodology that CMS expressly stated should have expired. CMS' regulation 42 C.F.R. §413.118(d) continued to provide that hospitals would be paid under the blended rate methodology during this period, despite the Congressional statutory mandate to the contrary. In fact, the regulations governing the outpatient blend methodology (42 C.F.R. §413.118 and §413.122) remain in the Code of Federal Regulations today.

32.    On September 8, 1998, the Secretary published a notice of proposed rulemaking to implement the OPPS at 63 *Fed. Reg.* 47552 *et seq.* The first page of the preamble stated that, "[a]lthough the statutory effective date for the [OPPS] is January 1, 1999, implementation of the new system will have to be delayed because of year 2000 systems concerns. … The [OPPS] will be implemented for all hospitals and community mental health centers as soon as possible after January 1, 2000…." 63 *Fed. Reg.* 47552 (September 8, 1998).

33.    In the preamble to the proposed rulemaking, the Secretary recognized that Congress had extended the 10% and 5.8% cost reduction factors for the capital-related costs and operating

---

[3]    Section 4522 of BBA '97 extended the 10% and 5.8% cost reduction factors in the statutory definition of reasonable cost "through 1999 and during fiscal year 2000 before January 1, 2000."

9

costs of hospital outpatient services. 63 *Fed. Reg.* 47554-44 (September 8, 1998). However, the

Secretary did not address how CMS would reimburse hospitals for outpatient services furnished on

or after January 1, 1999 and before the implementation of the OPPS.

34.    Shortly after the Secretary published the proposed rulemaking, Congress further

extended the 10% and 5.8% reasonable cost reduction factors beyond 1999.  BBRA §201(k)

(amending 42 U.S.C. §1395x(v)(1)(S)(ii)(I)-(II)).  As amended by the BBRA, these two cost reduction

factors in the statutory definition of "reasonable cost" for hospital outpatient services continued in

effect "until the first date that the prospective payment system under section 1833(t) is

implemented." *Id.*

35.    On April 7, 2000, the Secretary published the final OPPS rule, effective July 31, 2000

(65 *Fed. Reg.* 18434 *et seq.*).  On June 30, 2000, the Secretary published a rule which delayed the

effective date of the OPPS final rule to August 1, 2000 (65 *Fed. Reg.* 40535 *et seq.*).  In the preamble to

the final rule, the Secretary stated that the outpatient blend methodology would be used to calculate

reimbursement to hospitals for the costs of ASC services, outpatient radiology and other outpatient

diagnostic procedures rendered from January 1, 1999 through the effective date of the OPPS.  65 *Fed.*

*Reg.* 18489-90 (April 7, 2000).

36.    In the preamble to the final rule, the Secretary stated that:

"[t]he statement in the [September 8, 1998 proposed] rule that the statute requires
implementation 'effective January 1, 1999,' and other similar statements in other
rules, were not intended to mean that the statute requires retroactive
implementation of the [OPPS]."

65 *Fed. Reg.* 18438 (April 7, 2000).

## V.    Procedural History

### A.    Fiscal Year 1999

37.    The Medicare Intermediary issued an NPR for McLean on September 20, 2001.  The

Medicare Intermediary issued NPRs for the Brigham and MGH on September 26, 2002.  The NPRs

reflected the Intermediary's application of the outpatient blend methodology to the Hospitals' outpatient services payment determinations for their fiscal years ending September 30, 1999. The Hospitals challenged the application of the blended rate methodology beyond its explicit December 31, 1998 statutory expiration date by timely appealing their outpatient blend payment determinations. McLean's initial request for hearing letter was dated March 19, 2002 and the Brigham's and MGH's initial request for hearing letters were dated March 21, 2003. The Brigham and MGH requested a group appeal on February 15, 2005. McLean asked to be added to that group appeal on February 27, 2006.

**B.    Fiscal Year 2000**

38.    The Medicare Intermediary issued an NPR for MGH on September 25, 2003. The Medicare Intermediary issued NPRs for the Brigham, Spaulding and RHCI on September 26, 2003. The NPRs reflected the Intermediary's application of the outpatient blend methodology to the Hospitals' outpatient services payment determinations for their fiscal years ending September 30, 2000. The Providers challenged the application of the blended rate methodology beyond its explicit December 31, 1998 statutory expiration date by timely appealing their outpatient blend payment determinations. Their initial request for hearing letters were dated March 22, 2004 and their letter requesting a group appeal was dated July 16, 2004.

**C.    Fiscal Years 1999 and 2000**

39.    On May 27, 2008, the Hospitals requested that the Board grant expedited judicial review for both fiscal years. On June 16, 2008, the Board granted the Hospitals' request.

**VI.    Reasonable Costs Should Be Paid for Outpatient Services Rendered From January 1, 1999 Through July 31, 2000.**

40.    The Secretary's application of the blended rate methodology to outpatient services furnished by the Hospitals to Medicare beneficiaries on or after January 1, 1999 and on or before July 31, 2000, and the resultant denial of paying the Hospitals the reasonable costs for those services,

should be set aside, pursuant to 5 U.S.C. §706, as exceeding the Secretary's statutory authority and as being contrary to law, arbitrary, capricious and unsupported by substantial evidence.

41.    Congress' intent, as expressed in the plain language of BBA '97, §4523(d), prevails over any interpretation by the Secretary of Congress' purpose, resulting in the Secretary's delay in implementing the OPPS. *See Natural Resources Defense Council v. U.S. Environmental Protection Agency*, 805 F.2d 410 (D.C. Cir. 1986).

42.    When an agency determines that a statute cannot be implemented as it was written, the agency "may deviate no further from the statue than is needed to protect congressional intent." *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Circ. 1998).

43.    Congress' clear intentions were: (i) to cease the application of the blended rate methodology as of January 1, 1999; (ii) to continue providing Medicare coverage for hospital outpatient services furnished on that date and thereafter; and, (iii) ensure that Medicare pays its fair share for outpatient services, without cross-subsidization.

44.    On two separate occasions, Congress amended the Medicare Act in order to extend the 5.8% cost reduction factor for operating costs and the 10% cost reduction factor for capital-related costs in the statutory definition of the reasonable cost of hospital outpatient services. The amendments kept the cost reduction factors effective through the effective date of the Secretary's delayed implementation of the OPPS. No similar Congressional action was taken to extend the outpatient blend methodology.

## Count I

45.    Plaintiffs hereby incorporate by reference paragraphs 1-44 herein.

46.    The Secretary's application of the blended payment methodology to hospital outpatient services furnished after December 31, 1998 violates Section 1833(a)(2) of the Act, which provides for reimbursement based on reasonable cost (as defined in Section 1861(y) of the Act) or the

provider's customary charges for those services, if lower, except where Congress expressly has

authorized payment on some other basis.  *See* 42 C.F.R. §413.1(b).

## Count II

47.    Plaintiffs hereby incorporate by reference paragraphs 1-46 herein.

48.    The Secretary's application of the blended payment methodology to hospital

outpatient services furnished after December 31, 1998 and before implementation of the OPPS on

August 1, 2000 is arbitrary and capricious because it is inconsistent with the agency's treatment of

other services which were not intended to be paid under the impending OPPS.  *Transactive Corp. v.*

*United States*, 91 F.3d 232,237 (D.C. Cir. 1996).  The Secretary continues to reimburse hospitals on a

reasonable cost basis for hospital outpatient services which are not designated for payment under the

OPPS but has failed to explain why the services at issue in this case, when the OPPS was not yet in

effect, should be treated differently.

## Count III

49.    Plaintiffs hereby incorporate by reference paragraphs 1-48 herein.

50.    The Secretary's application of the blended payment methodology to the Hospital's

outpatient services at issue in this case violates the Hospitals' due process rights because the Secretary

did not give the Hospitals fair, advance notice as to how they would be reimbursed for the outpatient

services which they furnished to Medicare beneficiaries from January 1, 1999 through July 31, 2000.

*See GranCare, Inc. v. Shalala*, 93 F.Supp.2d 24, 31-32 (D.D.C. 2000).

## Count IV

51.    Plaintiffs hereby incorporate by reference paragraphs 1-50 herein.

52.    The Intermediary's application of the April 7, 2000 final rule (65 Fed. Reg. 18434,

18489-90) to deny reimbursement for the reasonable cost of outpatient services previously furnished

to Medicare beneficiaries is an impermissible, retroactive application of a rule, contrary to law. *Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988).

## VII.   Requested Relief

WHEREFORE, Plaintiffs request judgment in their favor on Counts I through III and that, among other things, the Court enter an Order:

1.   declaring that the Secretary's application of the blended payment methodology to the outpatient services rendered by the Hospitals to Medicare beneficiaries on or after January 1, 1999 and on or before July 31, 2000 and the Secretary's denial of Medicare reimbursement to the Hospitals' for the reasonable costs of rendering those services, is invalid;

2.   instructing the Secretary to direct the fiscal intermediary to reopen the Plaintiffs' cost reports for Fiscal Years 1999 and 2000, because CMS' determinations for these Hospitals for this fiscal year were made in violation of the applicable law, and promptly to reimburse the Hospitals for the designated outpatient services on a reasonable cost basis, rather than using the blended rate methodology, for the period from January 1, 1999 through July 31, 2000;

3.   awarding Plaintiffs both pre- and post-judgment interest, calculated on the additional amounts determined through the reopening process, in accordance with 42 U.S.C. §139500(f)(2);

4.   providing that this Court shall retain jurisdiction in this matter until the Secretary has instructed his intermediaries in accordance with this Court's rulings, and until the intermediaries have completed the reopening process (including the issuance of revised NPRs where applicable);

5.     awarding attorney's fees and costs of suit incurred by Plaintiffs, as permitted by law;

and

6.     providing such other relief as this Court deems just and appropriate.

By their attorney,

Edward D. Kalman, Esq.
D.C. Bar # 485092
BEHAR & KALMAN, LLP
6 Beacon Street, Suite 312
Boston, MA  02108-3802
Phone: (617) 227-7660
Fax: (617) 227-4208
ekalman@beharkalman.com

DATED this 6th day of August, 2008

F:\Data\Client\Partners\1999 Group Appeals\1999 Outpatient Blend Group Appeal\District Court\08.06.08 - Complaint - Execution Copy.doc

15

C 08-1412 RMU

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Brigham & Women's Hospital, The General Hospital Corporation d/b/a Massachusetts General Hospital, McLean Hospital, Spaulding Rehabilitation Hospital and Rehabilitation Hospital of the Cape & Islands | Michael O. Leavitt, Secretary, United States Department of Health & Human Services |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Suffolk Cty, MA.
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Edward D. Kalman, Esq.
Behar & Kalman, LLP
6 Beacon Street, Suite 312
Boston, MA 02108-3802
(617) 227-7660

ATTORNEY!

Case: 1:08-cv-01412
Assigned To : Urbina, Ricardo M.
Assign. Date : 8/12/2008
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ◉ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☒ 151 Medicare Act<br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

| Real Property | Bankruptcy | Forfeiture/Penalty | |
|---|---|---|---|
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | ☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

3

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** <br> ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** <br> (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** <br> ☐ **890 Other Statutory Actions** (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans** (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** <br> ☐ **720 Labor/Mgmt. Relations** <br> ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** <br> ☐ **740 Labor Railway Act** <br> ☐ **790 Other Labor Litigation** <br> ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** <br> ☐ **443 Housing/Accommodations** <br> ☐ **444 Welfare** <br> ☐ **440 Other Civil Rights** <br> ☐ **445 American w/Disabilities-Employment** <br> ☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance** <br> ☐ **120 Marine** <br> ☐ **130 Miller Act** <br> ☐ **140 Negotiable Instrument** <br> ☐ **150 Recovery of Overpayment & Enforcement of Judgment** <br> ☐ **153 Recovery of Overpayment of Veteran's Benefits** <br> ☐ **160 Stockholder's Suits** <br> ☐ **190 Other Contracts** <br> ☐ **195 Contract Product Liability** <br> ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting** (if Voting Rights Act) |

**V. ORIGIN**

● 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

42 U.S.C. §1395oo(f) - Whether the Secretary of HHS implemented a Medicare outpatient payment system in violation of 42 U.S.C. §1395l(n)+(t).

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** _____    Check YES only if demanded in complaint    **JURY DEMAND:** YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☒    NO ☐    If yes, please complete related case form.

DATE  August 6, 2008    SIGNATURE OF ATTORNEY OF RECORD  _[signature]_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.